IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CANDACE BOYER, as personal representative
of the wrongful death claim of KEVIN BOYER,

      Plaintiff,

v.                                                                Civ. No. 03-997 JCH/WDS

THE CITY OF ALBUQUERQUE, DETECTIVE
S.M. HALL, POLICE OFFICER JOE FEATHER,
POLICE OFFICER LEONARD HOLLOWAY, and
ALBUQUERQUE AMBULANCE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions *in limine* by defendants Joe Feather and Leonard Holloway: motion *in limine* to exclude evidence concerning the use of pepper spray and restraints as a cause of death [Doc. No. 76], and motion *in limine* to exclude any reference to the use of a "hog-tie" technique [Doc. No. 90]. After careful consideration of the law and the arguments, the Court concludes that the motion regarding the use of pepper spray and restraints should be granted in part and denied in part, and the motion regarding the "hog-tie" technique should be granted.

Also before the Court are two untimely motions: a *Daubert* motion by Defendants Feather and Holloway [Doc. No. 77] and a motion by Plaintiff for certain procedures in voir dire [Doc. No. 97]. Both of these motions will be denied.

## DISCUSSION

### I. EVIDENCE CONCERNING THE USE OF PEPPER SPRAY AND RESTRAINTS

Defendants Joe Feather and Leonard Holloway ("Defendants") have moved for an order *in limine* preventing Plaintiff's counsel from presenting argument, testimony, and evidence that their use of physical restraints and pepper spray on Kevin Boyer caused his death. In support of their motion, Defendants have pointed to the deposition testimony of Plaintiff's expert Dr. Roland Wright, in which he stated that he cannot say, within a reasonable degree of medical certainty, whether the use of pepper spray or physical restraints caused Mr. Boyer's death. Defendants' own medical experts, Dr. Gary Vilke and Dr. Charles Wetli, also have concluded that neither the pepper spray nor the physical restraints caused Mr. Boyer's demise.

However, in his response brief Plaintiff points to the autopsy report of Dr. Ross Zumwalt of the Office of the Medical Investigator. In his autopsy report relating to Mr. Boyer, Dr. Zumwalt states, "[t]he physical exhaustion resulting from the chase and *restraint may have contributed* to death." (emphasis added). This statement provides some support of Plaintiff's theory that Defendants' use of physical restraints on Mr. Boyer was a factor in his death. In contrast, Plaintiff comes forward with no evidence to support a conclusion that the use of pepper spray contributed to Mr. Boyer's death.

Based upon the foregoing, the Court finds that Defendants' motion should be granted in part—specifically, due to the absence of evidence on the matter, Plaintiff will not be permitted to argue that the use of pepper spray caused Mr. Boyer's death. However, based upon the above statement in Dr. Zumwalt's autopsy report, the Court will deny Defendants' motion as it relates to the use of restraints as a possible cause of death.

One further point of clarification is necessary. Defendants styled their motion as one to "exclude testimony and evidence concerning the use of pepper spray and restraints on Kevin Boyer *as a cause of death*." (emphasis added). However, in the memorandum brief in support of their motion, Defendants take their request even further, apparently asking the Court to exclude the evidence of use of pepper spray and physical restraints entirely, and not merely as possible causes of death. In other words, the Defendants appear to ask the Court to prevent the jury from ever hearing that Defendants used pepper spray and physical restraints on Mr. Boyer. This request is unpersuasive. In evaluating Plaintiff's claim that Defendants used constitutionally excessive force, the jury is entitled to hear all of the facts surrounding Mr. Boyer's detention and arrest. Therefore, this Court will restrict the admission of this evidence only in the manner described in the foregoing paragraph.

Accordingly, Defendants' motion *in limine* relating to evidence of the use of pepper spray and physical restraints as a cause of death will be granted in part and denied in part.

## II.    REFERENCES TO THE USE OF THE "HOG-TIE" TECHNIQUE

Defendants ask the Court to hold that Plaintiff may neither present evidence nor argue that police officers detained Kevin Boyer using the "hog-tie" technique. In *Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001), the Tenth Circuit Court of Appeals described this technique as "the binding of the ankles to the wrists, behind the back, with 12 inches or less of separation." The affidavit of expert witness Lou Reiter, which Defendants attached to their motion, confirms this definition of the "hog-tying" technique.

Based on the record currently before the Court, it does not appear that there is any evidence whatsoever to support a conclusion that Defendants restrained Kevin Boyer using the "hog-tying"

3

method. Rather, the record suggests that the police defendants bound Mr. Boyer's hands and ankles together in front of his body, and that his wrists were bound to his ankles using a strap approximately three feet in length. Under this form of restraint, known as a "passive restraint system" ("PRS") or a "hobble restraint," the restrained individual may stand and walk, albeit in a hunched over position.

Plaintiff acknowledges that she does not anticipate calling any witnesses who will use the term "hog-tying." However, Plaintiff contends that in her argument to the jury she should be permitted to use common words such as "hog-tying" rather than technical terms such as PRS. Plaintiff ignores the fact that the phrase "hog-tied" has a specific meaning that does not appear to be applicable in this case because there is no indication that Defendants employed that technique. Because Plaintiff has pointed to no evidence to support a conclusion that Mr. Boyer was "hog-tied," any mention of "hog-tying" is irrelevant under Fed. R. Evid. 401. Further, the Court finds that term to be more unfairly prejudicial than probative and therefore excludes it under Fed. R. Evid. 403 as well. Counsel for the Plaintiff will not be permitted to use that label to describe the manner in which defendants retrained Mr. Boyer, and Defendants' motion *in limine* on this subject will be granted.

### III.    MOTION TO EXCLUDE McDONALD'S TESTIMONY ON HEDONIC DAMAGES

Although Defendants label this motion as a motion *in limine*, in substance it is a *Daubert* motion. On April 7, 2005, this Court sent all parties a trial notice [Doc. No. 55]. Exhibit 1 to that notice clearly states that the deadline for motions *in limine* does not include *Daubert* motions, but rather such motions must be fully briefed before the dispositive motions deadline. In this case, that deadline was September 6, 2005. *See* Doc. No. 57, Order Extending Discovery and Related Deadlines. The purpose of this rule is to allow the Court sufficient time to conduct a *Daubert* hearing and thoroughly evaluate the relevant *Daubert* factors. However, Defendants did not file their motion

4

until January 17, 2006, less than three weeks prior to the commencement of trial in this case.

Accordingly, Defendants' motion will be denied as untimely.

## IV.     MOTION FOR CERTAIN JURY SELECTION PROCEDURES

In this motion, which she filed on January 26, 2006, Plaintiff asks the Court to (1) send Plaintiff's proposed questionnaire to potential jurors, (2) allow jurors to answer questions on sensitive topics outside the presence of other members of the venire, and (3) permit counsel to participate in voir dire.

Plaintiff's motion regarding the questionnaire will be denied as untimely.  It is simply impossible for the Clerk's Office staff to copy, mail out, collect, and sort the questionnaires at this late date.  Ordinarily, motions of this sort must be filed at least six weeks before trial.

Plaintiff's motion regarding juror confidentiality and attorney participation in voir dire will be denied as moot because the Court's standard practices regarding voir dire already incorporate these procedures. The Court routinely permits jurors to approach the bench if they feel uncomfortable answering a question regarding a sensitive subject matter in the presence of their fellow venire members.  Further, as the Court informed counsel at the January 18, 2006 pretrial conference, counsel will be permitted to participate in voir dire subject to time limits set by the Court.

Accordingly, Plaintiff's motion will be denied.

**IT IS THEREFORE ORDERED** that:

(1)     Defendants' motion *in limine* to exclude evidence concerning the use of pepper spray and restraints as a cause of death [Doc. No. 76] is **GRANTED IN PART** and **DENIED IN PART**;

(2)     Defendants' motion *in limine* to exclude any reference to the use of a "hog-tie" technique [Doc. No. 90] is **GRANTED**;

5

(3)    Defendants' motion to exclude testimony by Brian McDonald [Doc. No. 77] is **DENIED**; and

(4)    Plaintiff's motion for certain procedures in voir dire [Doc. No. 97] is **DENIED**.

Dated this 1st day of February 2006.

_____
**UNITED STATES DISTRICT JUDGE**